TERRELL, Justice.
On petition of appellee, A. J. Mathis, alternative writ of mandamus was directed to L. W. Lambert as Tax Collector of Pinellas County commanding him to issue petitioner a state and'county occupational license to take blood pressure readings upon payment of the license fee fixed by law or to show cause on a day fixed by the court why he refuses to do so. There was an amended return to the alternative writ in which many of its allegations were admitted but, said respondent, the Comptroller of the State had instructed all tax collectors to require a certificate from the State Board of Basic Science Examiners showing his competence to take blood pressure readings before issuing such a license. Petitioner challenges the legality of such a requirement. At final hearing on the issues made by the alternative writ and the amended return, the trial court ordered respondent (1) to issue petitioner a state and county license for 1953-54 to make blood pressure readings, (2) permitted C. M. Gay as Comptroller of the State to intervene and be made a party to the cause and plead as he may desire. This appeal is from the final judgment so entered.
The point for determination is whether or not one making blood pressure tests for a fee is required to furnish the tax collector a certificate of competence from the State Board of Basic Science Examiners as a prerequisite to securing a state and county license to engage in his business, as required by F.S. Section 205.051, F.S.A.
The pertinent part of Section 205.051 has to do with the issuing of license to practice medicine and is as follows:
“(1) From and after the passage of this act it shall be unlawful for the tax collectors of the several counties of the State of Florida to issue state and county occupational licenses to any persons applying for license to practice medicine in any of its branches unless and until proof of current qualification and competency, as established by certificate or license issued by state boards duly constituted and legally authorized to determine qualification and competency, be exhibited at the time of making such application.”
*871 The answer to the question presented also involved the interpretation of F.S. Sections 456.02 and 458.13, F.S.A. Section 456.02 has to do with definitions used in what is currently known as the Basic Science Law, Chapter 456, F.S.1953, F.S.A., the pertinent part of which is as follows:
“(1) The term, ‘Basic Sciences,’ means the following subjects: anatomy; physiology; chemistry; pathology; bacteriology.
“(2) The healing art includes any system, treatment, operation, diagnosis, prescription or practice for the ascertainment, cure, relief, palliation, adjustment, or correction of any human disease, ailment, deformity, injury, or unhealthy or abnormal physical or mental condition.”
Section 458.13 points out those who may be licensed to practice medicine in this state and details others who are not so included. The pertinent part of said act is as follows:
“(1) Any person, except as hereinafter provided, shall be deemed to be practicing medicine within the purview of this chapter, who holds himself out as being able to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition, or who shall offer or undertake, by any means or method, to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition.”
Casual examination of Section 205.051 discloses that a license to practice medicine is required only by those who have a cer-ifícate issued by the State Board of Medical Examiners duly constituted and legally authorized to determine their qualification and competency. Section 456.02 defines the terms that are comprehended as “basic sciences” as well as those embraced in the “healing arts.”
One who takes blood pressure tests only, announces the result without giving advice or prescribing treatment, is not a medical practitioner as contemplated by Section 458.13. Neither is he included in the exceptions to the act, the names of which we do not detail. It is not shown or alleged that appellee holds himself out as being prepared to treat, diagnose, operate on or prescribe for any of the human ills contemplated by F.S. Section 458.13, F.S.A. It seems to be recognized that blood pressure is not a disease but is one of the symptoms or factors which aids the physi-' cian in diagnosing the physical condition of the patient. State Board of Medical Examiners of New Jersey v. Plager, 118 N.J.L. 434, 193 A. 698. See also following supporting extract from F.S. Section 456.-02(2), F.S.A.:
“The healing art includes any system * * * for the ascertainment * * of any human * * * ailment * * * unhealthy or abnormal physical * * * condition.” (Emphasis supplied.)
In this we do not overlook the fact that in 1948 the Attorney General at that time gave the State Comptroller an opinion which may be construed as holding that one taking blood pressure by the use of a baumanometer was practicing a “healing art”, making him subject to license as required by F.S. Section 205.051, F.S.A. Administrative rulings are persuasive but they are not binding on this Court. The legislature may prescribe the qualifications of persons authorized to engage in any trade or occupation “affected with a public interest”, Sullivan v. DeCerb, 156 Fla. 496, 23 So.2d 571, and it has' frequently done so. Such regulations, however, are subject to the limitation that they will be declared void if found to be unreasonable or in conflict with due process or equal protection of the laws. Gandy v. Borras, 114 Fla. 503, 154 So. 248; Riley v. Sweat, 110 Fla. 362, 149 So. 48. Legislation of this character will also be strictly construed in view of the penalties attached to it. Cf. State ex rel. Jordan v. Pattishall, 99 Fla. 296, 126 So. 147. The application of these and other principles we think removes respondent from the class defined as medical practitioner in any of its aspects or from *872 being comprehended as one engaged in the “healing arts.”
If he is not a practicing physician or his business may not be comprehended in the “basic sciences” or the “healing arts,” he cannot be required to furnish a certificate of qualification from the State Board of Basic Science Examiners as a prerequisite to securing a license to engage in the business of taking blood pressure tests.
It follows that the judgment appealed from must be and is hereby affirmed.
Affirmed.
MATHEWS, C. J., and SEBRING and ROBERTS, JJ., concur.